THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO PELLICCIA, Defendant and Appellant.

Nos. 6934 and 6935.   Argued May 20, 1938.—Decided July 23, 1938.

*Martínez Nadal, Juliá & Hernández Matos* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Antonio Pelliccia was accused of having committed first degree murder upon the person of Rafael Ralat, and was

also charged with the offence of carrying a prohibited weapon. Both cases were heard together and defendant found guilty of voluntary manslaughter and also of the other charge. On appeal the cases were argued on the same day and one brief was filed to cover both of them. Both appeals, therefore, may be disposed of in a single opinion.

■■ There was no assignment of error to that effect, but a sufficiency of the information to state a crime of first degree murder is raised for the first time on appeal. The pertinent portion of the charge says that the defendant:

" . . . wilfully and unlawfully, with malice, premeditation, deliberation and firm and settled purpose of unlawfully killing him, assaulted Rafael Ralat, a human being, with a revolver which is a deadly weapon, etc. . . . "

Defendant contends that the element of ''treachery'' (*alevosía*) was omitted. Section 201 of the Penal Code (1937 ed.) which defines the degrees of murder reads:

''Section 201.—*Degrees of Murder.*—All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree.''

As pointed out in the case of *People* v. *Belardo,* 50 P.R.R. 491, there is a discrepancy between the English and Spanish text. Where the English version reads ''or by any other kind of *wilful,* deliberate and premeditated killing,'' the Spanish equivalent says: "*y toda clase de muerte alevosa, deliberada y premeditada.*" The word ''wilful'' has been translated into ''alevosa'' which has an entirely different meaning. There is no doubt that with regard to the Penal Code which was approved before 1917, the English text should prevail. *People* v. *Belardo, supra.* The information satisfied the requirements of section 201, *supra,* as it reads in English. It is clearly charged that the killing was wilful, deliberate and premeditated.

■ Three errors are assigned. The first one reads:

"The verdict rendered by the jury in the instant case is contrary to the evidence submitted therein."

The contention of the appellant cannot prevail. The evidence of the People substantially tended to show that Pelliccia and Ralat, the deceased, were associated in the locally popular sport of cock-fighting; that Ralat took care of, and trained the fowls for Pelliccia; that on the day of the killing the defendant had lost some fights and because of weather conditions warned Ralat against allowing his last fighter to get wet, and accused Ralat of being in conspiracy with his opponent; that Ralat became aroused at Pelliccia's attitude and refused to continue caring for the game-cock and that Pelliccia, according to the People's witnesses, then faced Ralat in a threatening attitude and told him that he thought or had thought that Ralat was a "decent person" (*persona decente*), and more to the same effect. The testimony then tended to show that Ralat struck Pelliccia in the face and the latter immediately rode away on horseback. The government introduced Miguel and Pelegrín Hernández as eyewitnesses to the actual shooting and they testified that they were walking home with Rafael Ralat about four or five o'clock in the afternoon when the defendant, who was hiding behind some bushes (*maleza*), shot Ralat in the back; that the defendant was standing upon land belonging to Desiderio Luciano near the edge of the road and after the shooting ran towards his own farm. Another witness, Anastasio Pola, testified that he saw the defendant running towards his house shortly after he heard the shot which later turned out to be the fatal one.

The defendant set up a case of self-defense. The essential facts of the incident at the cock-fight are admitted, but the version of the defendant's witnesses was that Pelliccia merely told Ralat to be sure that the game cock did not get wet, and that Ralat then replied that he was a meddler

*(intruso)* and threw the bird at him in a very disagreeable manner; that when Pelliccia offered his excuses saying that he did not mean to offend, Ralat struck him in the face and as Pelliccia left, Ralat said, ''You have your children but you'll never bring them up.'' As to the actual shooting the witnesses, Eladio Serrano and Rafael Pantoja, testified that they had gone to the defendant's farm for the purpose of coming to an agreement about a plot of land which they were going to cultivate in ''share-cropping'' *(a medias)* fashion with Pelliccia and all three had gone over the farm when they saw Ralat coming up the road which skirted defendant's land; that upon seeing the defendant, who was standing on his own land, the deceased dropped a game-cock which he was carrying and said, ''Now I'm going to fix you'' or else ''Here is that scoundrel'' and at the same time pulled a barber's razor and attacked the defendant, who retreated a few steps, drew his gun and shot the deceased.

Defendant, in his brief, copies the salient portion of the testimony of Serrano and Pantoja and relies on that to convince us that the verdict of the jury was against the evidence. No attempt is even made to discuss the whole evidence nor to show that the evidence of the People should not have been believed by the jury. A clear conflict in the testimony offered by the various supposed eye-witnesses was decided in favor of the prosecution. Under the circumstances of the case this court is practically bound to support the verdict of a jury which heard the witnesses and was in a better position to pass upon their credibility. *People* v. *Colón,* 42 P.R.R. 52, *People* v. *Rosado,* 17 P.R.R. 417, *People* v. *Villegas,* 6 P.R.R. 460. There is no attempt to impute passion, prejudice or partiality on the part of the jury nor the commission of manifest error. See *People* v. *Goitía,* 5 P.R.R. 249; *People* v. *Dessus,* 12 P.R.R. 330; *People* v. *Jiménez,* 48 P.R.R. 14, and *People* v. *Vázquez,* 48 P.R.R. 413.

The second assignment of error is as follows:

"The District Court of Ponce committed a grave and prejudicial error in convicting the defendant of carrying arms."

This depends for its validity upon the same matters as the first, inasmuch as the credibility of the testimony of the identical witnesses is involved. For the reasons given above the error cannot avail the appellant. The testimony believed by the jury was sufficient to show that defendant shot from a point outside of his own farm and thus was guilty of carrying a prohibited weapon.

■ The last assignment sets up an objection to certain rebuttal testimony given by a justice of the peace in order to establish the good reputation of the deceased. It appears that the defense had previously attacked the reputation of the deceased and had attempted to set him up before the jury as a fighter and bully *(guapo)*, a man to be feared and actually feared by the community. With these antecedents, the prosecution placed the local justice of the peace on the stand and asked him whether he had ever been obliged to intervene with Rafael Ralat. The witness answered in the negative, after the court had overruled the defendant's objection and exception had been duly saved.

The error is based on section 158 of the Law of Evidence, which reads:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

We fail to see the application of the above section to the present incident. The reputation or character of the deceased had been attacked and the prosecution was merely exercising its privilege of trying to establish his good reputation. There was no attempt to impeach the credibility of any specific witness. The defense itself had put the character of the deceased in issue and thus opened the door for the

prosecution. Furthermore, the error, even if it had been committed, would not have been prejudicial.

The judgments of the lower court should be affirmed.

Mr. Justice Travieso and Mr. Justice De Jesús took no part in the decision of this case.